WILLIAM YOUNG & Co.

v.

WARD & PIERCE ET AL.

FRAUDULENT CONVEYANCE.—Although appellees were the sons-in-law of A, and the conveyances in question were no doubt made by A for the purpose of favoring appellees, to secure their claims in preference to appellants and other creditors, yet, after a careful examination of the evidence, the court is unable to say that there was any fraudulent intent on the part of the appellees.

APPEAL from the Circuit Court of Grundy county; the Hon. GEORGE W. STIPP, Judge, presiding. Opinion filed August 7, 1885.

Messrs. BISBEE, AHRENS & DECKER, for appellants.

Mr. S. C STOUGH, for appellee.

LACEY, P. J. This was a bill in equity to set aside certain conveyances of real estate, executed by Samuel Ward, now deceased, to appellees, Thomas Walsh and Willard Small, in the nature of a bill of discovery on the part of the appellants, to subject the land to sale to satisfy certain judgments in their favor upon which executions issued and were levied on the lands in question.

Two deeds are attacked and sought to be set aside as fraudulent—one by Samuel Ward to Thomas Walsh, for 88½ acres of land, made at or about the time the firm of Ward & Pierce failed, Ward being one of the members of the firm, and the other deed to Willard Small, one of the other appellees, for 113 acres of land by the same grantor. It is sought to set aside these conveyances for alleged fraud in the sales, it being charged that the conveyances were made for the purpose of hindering and delaying creditors and were not *bona fide.* It is true that the appellees were the sons-in-law of Samuel Ward, and that the conveyances were no doubt made by Ward for the purpose of favoring the appellees, to secure their claims in preference to the appellants and other creditors; but after a careful examination of the evidence we are unable to say that there was any fraudulent intent on the part of the appellees. It will not be necessary for us to go over the evidence in detail as it would serve no good purpose; but as to the deed executed to Thomas Walsh for the 88½-acre tract, we think the evidence is clearly in his favor, and shows that there was no bad faith or desire on his part to defraud the creditors of Ward, but simply to secure himself.

We find as to the 113-acre tract deeded to Willard Small, while the evidence is not so clearly in his favor, yet we think there is not sufficient evidence of fraud in the transaction to warrant the court in setting aside the deed. The land was incumbered by mortgage to the Morris Bridge Company for nearly its full value.

The debt that Ward & Pierce owed Small, amounting, as testified to by Ward, to something like $416, which was turned in by Small on the purchase of the land, was, with the mortgage, enough to cover the full value of the land, and in this respect Ward received the full value of the land; and we see no sufficient proof that Small did not purchase the land in good faith for the purpose of securing his indebtedness against the firm of Ward & Pierce, and no proof that it was for the purpose of hindering and delaying creditors. This seemed to be the only way that Small had to save his own indebtedness. The land was all he could get, and he took it and

has redeemed it from the mortgage. The case of the lots sold to Thomas Walsh is not before us, the circuit court not having passed on that branch of the case, it having been continued, as shown by the recitals in the decree, by agreement; and for that reason we think no error can be assigned here that that branch of the case was not heard.

The case of the 60 acres for which Samuel Ward held a bond for deed from Seamark, and on which he had made partial payments, and which had been by Samuel Ward transferred to Willard Small, can not be reached in this proceeding, if at all; because Seamark forfeited the bond and declared the sale void for non-payment of interest and principal as the evidence shows. The point made is that Seamark's claim was a mortgage in equity, and that he held the title only as security for money. However that might have been in the original contract, a question not necessary to decide, the nature of the contract was changed and a new bond given by Seamark to Ward which fixed the title in Seamark subject to the bond, and with condition of forfeiture in the bond for non-payment of interest and principal; and the conditions of the bond not having been complied with, the bond was forfeited by Seamark and he became the absolute owner of the land. If Seamark afterward voluntarily gave Ward anything, that was his own business, but it is clear he did not intend to hold himself bound to pay anything to Ward. This case grew out of the same series of transactions, or a portion of them, as was developed in the case of the sale of the goods to Thomas Walsh; and the question of the validity of the sale of the goods by Ward & Pierce to Walsh was tried in a replevin suit wherein Walsh was plaintiff and John Schroeder was defendant, he being sheriff and having levied an attachment writ on them in favor of appellants; and the title of the property was adjudged in Walsh by the court and appealed by Schroeder to this court and is No. 1359; and the judgment therein has been affirmed by this court. The two cases were considered together. The decree of the court below is therefore affirmed.

Decree affirmed.